UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KYLE D. WALTERS,

          Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

         Defendant.

_____

**DECISION AND ORDER**

**No. 10-CV-01038T**

## INTRODUCTION

Represented by counsel, Kyle D. Walters ("Plaintiff" or "Walters"), brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over this action pursuant to 42 U.S.C. 405.

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Accordingly, this Court hereby grants the Commissioner's motion for judgment on the pleadings.

## PROCEDURAL HISTORY

On July 30, 2008, Plaintiff filed an application for DIB, claiming that he was disabled due to anxiety, depression, drug

abuse history, and neck injuries beginning on July 8, 2003. Plaintiff's claim was denied on November 18, 2008. Administrative Transcript ("Tr") 46, 49-56. At Plaintiff's request, an administrative hearing was conducted on August 10, 2010, with Administrative Law Judge ("ALJ") Paul Lang, presiding via videoconference. Tr. 26-45. Walters, who was represented by attorney Amanda Jordan, testified at the hearing, as did vocational expert Luther Piersaw, Ph.D. ("Piersaw" or "the VE").

On August 17, 2010, the ALJ issued a decision finding that Walters was not disabled during the period from his alleged onset date through his date last insured. Tr. 8-25, 46. On December 6, 2010, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. This action followed.

## FACTUAL BACKGROUND

Plaintiff has adopted the summary of the relevant medical evidence set forth in Defendant's Memorandum of Law (Dkt No. 6). Briefly, Plaintiff was diagnosed with lumbar stenosis and a herniated disc in 2001, for which he received epidural injections in 2001 and 2002. Tr. 236-44. Plaintiff has undergone physical therapy in December 2004, due to complains of sharp pain in his lumbar spine and numbness in his left thigh. Tr. 291.

Plaintiff has been monitored over the years for ischemic changes in the anterior wall of his heart. Tr. 328, 375. Testing has been within normal limits. Id.

Plaintiff has a history of dependence on and abuse of multiple controlled substances. On January 23, 2004, Plaintiff commenced in-patient treatment for substance abuse and reported a past diagnosis of depression and a 2003 hospitalization for a drug overdose. Tr. 251. He was diagnosed with opioid dependence and assigned a GAF of 34. Tr. 249, 261. Upon his discharge on February 23, 2004, he was diagnosed as Opiate, Cocaine and Amphetamine Dependent, with Mood Order and Obsessive Compulsive Personality Disorder. His GAF was 39. Tr. 378, 381.

Over the next few years, Plaintiff sought further treatment for his substance dependency. After treatment at an outpatient clinic from June 7, to June 17, 2004, Plaintiff had a GAF of 65 and had successfully completed all his treatment goals. Tr. 298, 299.

Beginning in 2006, Plaintiff commenced regular treatment with psychiatrists for his mood disorders and was prescribed medications. E.g., Tr. 481-482 (Report of Dr. Fernando). Reports from his treating psychiatrists indicate that Plaintiff has benefitted from his antidepressant medication, and although at times somewhat dysphoric and anxious, generally has a stable mood and is future-oriented. E.g., Tr. 493 (Report of Dr. Cirpili).

The medical evidence of record, along with Plaintiff's testimony, will be discussed below in further detail as necessary.

**DISCUSSION**

**I.   Scope of Review**

Title 42 U.S.C., Section 405(g) directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that the plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

## II. The Commissioner's Decision is Supported by Substantial Evidence

In his decision denying benefits, the ALJ followed the required five-step analysis for evaluating disability claims.[1] Tr. 11-20. Under step 1 of the process, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of disability through his date last insured. Id. at 13.

At steps 2 and 3, the ALJ concluded that Plaintiff had the following severe impairments: anxiety disorder, depression, drug and alcohol abuse in remission, degenerative disc disease, ischemic changes in his heart, cardiac arrhythmia, and obesity. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. The ALJ also determined that Plaintiff has a hiatal hernia and a polyp in his colon, but that these do not constitute severe impairments insofar as they do not significantly affect Plaintiff's ability to work. Id. at 13.

---

[1] The five-step analysis requires the ALJ to consider the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; (3) if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled; (4) if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work; (5) if the claimant's impairments prevent his or her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

At steps 4 and 5, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions.  Id. at 15.  Moreover, the ALJ found that Plaintiff was unable to perform any of his past relevant work, but that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  Id. at 18.

Plaintiff argues that the ALJ's decision was against the weight of substantial evidence, was arbitrary and capricious, and was erroneous as a matter of law.  Specifically, Plaintiff maintains that the ALJ's RFC finding was not supported by substantial evidence (Point I); the ALJ erroneously substituted his opinion for medical expert opinion (Point II); the ALJ did not properly assess Plaintiff's subjective complaints (Point III);  the ALJ erred in not fully considering the opinion of Plaintiff's treating therapist (Point IV); a finding of disability is warranted due to Plaintiff's inability to perform sustained work activities (Point V); and the ALJ erred as a matter of law in evaluating the severity of Plaintiff's mental impairment (VI).  See Plaintiff's Memorandum of Law ("Pl's Mem."), Points I-VI (Dkt. No. 8). As discussed further below, the Court finds that the ALJ's RFC determination was supported by substantial evidence and was not the product of legal error. Furthermore, the Court finds that the ALJ did not err in his assessment of Plaintiff's subjective complaints.

**A.    Alleged Errors in the ALJ's RFC Finding (Plaintiff's Points I, II, and IV)**

In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(3)-(4); see also SSR 96-8p, SSR LEXIS 5, 1996 WL 374184 (S.S.A. July 2, 1996). It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole. See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record.")).

Here, the ALJ determined that Plaintiff had the RFC to perform light work,[2] with the following restrictions: he could only bend, kneel, crouch, and climb stairs occasionally; he required a sit/stand option at one-hour intervals; he only could have limited exposure to fumes, odors, and temperature extremes; he could not work at unprotected heights or around dangerous machinery; he

---

[2]
      Light work requires the capacity to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, standing or walking, off and on, for six hours out of an eight-hour workday. 20 C.F.R. § 404.1567(b); see also Social Security Ruling (SSR) 83-10.

required simple instructions with no production-level work-pace; and he only could have limited interaction with the public and coworkers. Tr. 15.

With respect to Plaintiff's physical impairments, the ALJ assigned "significant weight" to the report of consultative examiner Dr. Kathleen Kelley. This was not improper, for a consultative physician's opinion may constitute substantial evidence in support of the ALJ's determination. See Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); Mongeur v. Heckler, 722 F. 2d at 1039. As discussed further below, Dr. Kelley's findings supported the ALJ's RFC determination, and were consistent with the record as a whole.

Dr. Kelley performed a consultative internal medicine examination of Plaintiff on October 27, 2008, and found that Plaintiff was obese, his gait was normal, he could walk on heels and toes without difficulty, his stance was normal, and his squat was full-range. Tr. 388-389. Plaintiff used no assistive devices, needed no help changing or getting on and off the examination table, and was able to rise from a chair without difficulty. Id. Dr. Kelley determined that Plaintiff had no swelling in his right knee and had full range of motion albeit some crepitus (crackling). Id.

With respect to Plaintiff's cervical spine, Dr. Kelley assessed that he had full flexion, full extension, full lateral

flexion bilaterally, and full rotary movement bilaterally.  Id. at
389.  Plaintiff had no scoliosis, kyphosis, or abnormality in the
thoracic spine.  His lumbar spine had 75 degrees of flexion,
10 degrees extension, 20 degrees of lateral flexion bilaterally,
and 25 degrees of rotation bilaterally.  Plaintiff's straight leg
raise was negative bilaterally in the supine and sitting positing.
Dr. Kelley assessed that Plaintiff had full range of motion in his
hips, knees, and ankles bilaterally.  He also had full strength in
his upper and lower extremities.

Dr. Kelley also noted that Plaintiff's joints were stable and
nontender, and his deep tendon reflexes were physiologic and equal
in his upper and lower extremities.  Id. at 389-390.  Plaintiff had
no muscle atrophy, his hand and finger dexterity were intact, and
he had full grip strength bilaterally.  Id. 390. It is notable that
although Plaintiff complained of chronic right knee pain,
Dr. Kelley found that he was "without obvious limitation on exam."
Tr. 390.

In addition to her examination findings, Dr. Kelley considered
diagnostic testing that showed only mild to moderate
osteoarthritis. In light of this evidence, Dr. Kelley found that
Plaintiff's low back pain would be aggravated by bending or
twisting of the lumbar spine or standing in one place without
breaks, and that kneeling, repetitive squatting and climbing of

stairs, or crawling without breaks might aggravate his knee. The ALJ appropriately incorporated these limitations into his RFC.

Dr. Kelley's assessment of Plaintiff's physical limitations was consistent with other medical evidence in the record, namely diagnostic testing performed on Plaintiff's back and right knee that revealed only mild to moderate impairments. For instance, a lumbar spine MRI in 2004 showed only mild to moderate herniation and degeneration, Tr. 348; a right knee x-ray in 2008 showed only mild to moderate osteoarthritis, id. 342; and a lumbar spine x-ray in 2010 showed only mild disc narrowing, id. 392.

As Defendant notes, the ALJ may "rely not only on what the record says, but also on what the record does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (citing, inter alia, Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982) (per curiam)). Indeed, the record reveals no significant treatment for Plaintiff's lumbar stenosis and herniation after his alleged onset date. Because Plaintiff bears the burden of proving his RFC, the ALJ could reasonably rely on the lack of evidence that would preclude a range of light work with additional exertional limitations. see 20 C.F.R. § 404.1545(a)(3) (the claimant is responsible for providing the evidence used in the residual functional capacity determination); see also Dumas, 712 F.2d at 1553.

With regard to Plaintiff's mental impairments, treatment notes from Plaintiff's treating psychiatrists, Drs. Ramon K. Tan,

Santhiapillal Fernando, and Esat Cirpili supported the ALJ's mental RFC. As the ALJ noted, notes from 2006 to 2009 from these psychiatrists showed Plaintiff's mental conditions improved and stabilized with treatment and medication. For instance, on July 17, 2006, Plaintiff reported to Dr. Tan that he was doing "fairly well" emotionally, mentally, and physically. Tr. 474. On October 30, 2006, Dr. Tan's assessment was that Plaintiff did not appear depressed. Tr. 473. At a May 21, 2007, appointment with Dr. Tan, Plaintiff reported that he had graduated with an associate's degree from community college and was going to enter a four-year program in the fall. Tr. 472.

On February 27, 2007, Plaintiff saw psychiatrist Dr. Fernando and reported mood swings, but denied psychotic symptoms. Tr. 482. Plaintiff was placed on medication, and a month later, Plaintiff reported significant improvement in his mood. Tr. 481. Dr. Fernando noted that Plaintiff appeared stable, with no evidence of psychosis. Tr. 481. Also, Dr. Fernando noted that Plaintiff did not have severe depressive symptoms. Tr. 478.

Plaintiff saw therapist Jolene Sparacino on July 31, 2007, who noted that in spite of Plaintiff's reported relationship- and school-related stressors, his GAF score was 65. Tr. 358.

When Plaintiff saw Drs. Fernando and Tan in February, May, and July of 2008, he reported that he was attending college and managing "fairly well." Tr. 366, 468, 480. He stated that his

medication continued to keep his mood stabilized without adverse side effects. Id.

In addition to the treating psychiatrist's findings, the report dated October 27, 2008, from consultative psychiatric examiner Dr. Thomas Ryan, Ph.D. supported the ALJ's mental RFC. Plaintiff was cooperative, and his manner of relating and social skills were adequate. Tr. 383. His thought processes were coherent and goal oriented, with no evidence of hallucinations, delusions, or paranoia. Tr. 383. Plaintiff's affect had some range, and his speech and thought content were appropriate in light of his underlying depression. Tr. 384. Dr. Ryan found that Plaintiff's attention and concentration were intact, as were his recent and remote memory skills. Id. Plaintiff's cognitive function was average, although his insight and judgment were somewhat poor. Id.

Based on his examination, Dr. Ryan found that Plaintiff had no significant limitation in his ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform some complex tasks. Tr. 384. Dr. Ryan did find that Plaintiff had a moderate to severe limitation in his ability to make appropriate decisions, relate adequately with others, and deal with stress. The ALJ incorporated these limitations in his RFC by limiting Plaintiff to jobs with simple instructions, no production

requirements, and reduced interaction with the public and coworkers.

The findings by Plaintiff's treating psychiatrists and the consultative examiner provide substantial support for the ALJ's finding that Plaintiff could provide the mental activities required by a light work position, provided that he only had to follow simple instructions, did not have to conform to a production-level work-pace, and only have limited interaction with the public and fellow employees. Tr. 15.

### B. The ALJ Did Not Err in Declining to Afford Greater Weight to the Opinion of Plaintiff's Therapist

Plaintiff also argues that the ALJ erred in affording only slight weight to the assessment of therapist Sparacino. Tr. 18. Plaintiff asserts that the ALJ erred by failing to properly evaluate the mental assessment form completed Sparacino under the requirements of SSR 06-03p, 2006 SSR LEXIS 5. See Pl's Mem. at 13. He claims that the ALJ "summarily dismissed the records and recommendations from [Sparacino] simply because she was too low on the pecking order." Id.

According to SSR 06-3p, "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." SSR 06-3p. "Acceptable medical sources" are further defined by regulation as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 416.913(a). In contrast,

social workers are defined as "other sources" whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight. 20 C.F.R. § 416.913(d)(1). The ALJ "has the discretion to determine the appropriate weight to accord the [other source]'s opinion based on all the evidence before him[,]" Diaz v. Shalala, 59 F.3d 307, 314 (2d Cir. 1995); see also, e.g., Genier v. Astrue, 298 F. App'x 105, 108-09 (2d Cir. 2008) ("[M]any of the key medical opinions cited during the benefits period at issue were those of a physician's assistant and a nurse practitioner—and not a physician. As such, the ALJ was free to discount the assessments accordingly in favor of the objective findings of other medical doctors. There was no treating physician error.").

Therapist Sparacino was an "other source" rather than an acceptable medical source under the Regulations and, therefore, she could not be a "treating source" for purposes of the treating physician rule. The ALJ did not abuse his discretion in declining to afford Sparacino's mental functioning assessment greater weight because, as Defendant argues, Sparacino's report was inconsistent with her own treatment notes. In particular, Sparacino indicated in her July 2008 mental assessment that Plaintiff had "significant" impairments in understanding simple job instructions. Earlier that same month, however, Sparacino had found that Plaintiff's mental examination was normal and his GAF score was 60, which indicates

only moderate limitations in social and vocational functioning. Tr. 364, 401. Sparacino's mental functioning assessment also was inconsistent with progress notes during that time-period from Plaintiff's treating psychiatrists, which indicated that Plaintiff had maintained a similar level of functioning (GAFs of 60-65), had returned to school, and was generally stable and improved with medication and therapy. See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he less consistent [an] opinion is with the record as a whole, the less weight it will be given."). Accordingly, the Court cannot find that ALJ erred in affording only slight weight to treating therapist Sparacino's mental functioning assessment.

## C. The ALJ Did Not Err in Failing to Further Develop the Record

Plaintiff alleges that the ALJ erred in failing to obtain medical expert testimony or recontact Plaintiff's treating physicians. See Pl's Mem. at 8. Defendant contends that the record was sufficient to support a decision on the issue of disability and therefore recontacting Plaintiff's treating sources was not required. The Court agrees.

Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the

administrative record.") (citations omitted); see also Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996). Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. Donmore v. Astrue, No. 07-CV-732S, 2009 WL 2982982, at *4 (W.D.N.Y. Sept. 14, 2009) (citing 20 C.F.R. § 404.1512(e)). The ALJ does not have a duty to re-contact a treating physician if the evidence submitted by the treating source, viewed as a whole, is complete. Hluska v. Astrue, No. 6:06-CV-0485 (LEK/VEB), 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009) (citations omitted). Moreover, the ALJ is not obligated to recontact treating physicians when the record contains no critical gaps and there are medical opinions from different sources concerning the plaintiff's impairments. Taylor v. Astrue, No. 3:05-CV-1444 (LEK/DEP), 2008 WL 3884356, at *13 n.18 (N.D.N.Y. Aug. 18, 2008).

As discussed above, the record contains ample treatment notes from Plaintiff's treating sources related to his impairments and the resultant limitations. Because the ALJ had adequate medical findings in the record to assess Plaintiff's restrictions and his ability to work during the relevant period, there was no reason for the ALJ to re-contact any of these treating sources or call for the testimony of a medical expert. The arguments set forth at points I, II and IV of Plaintiff's memorandum of law in support of his motion are therefore rejected.

**C.    The ALJ Properly Assessed Plaintiff's Subjective Complaints**

At Point III of Plaintiff's memorandum in support of his motion, he maintains that the ALJ failed to properly assess his subjective complaints.  Specifically, he claims that the ALJ should have given them "great weight," and that the ALJ erred in not complying with SSR 96-7p.  See Pl's Mem., Point III; see also Plaintiff's Reply Memorandum of Law at 2).

A claimant's subjective complaint of pain is an important factor to be considered in determining a disability.  Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984).  However, the ALJ "has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment [regarding the pain] . . . [which he must do] in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant."  Mimms, 750 F.2d at 186 (citation omitted).  The ALJ thus is not obligated to accept a claimant's testimony about his limitations without question. Id.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's statements about his subjective complaints of pain and functional limitations and found that they were not entirely credible.  Tr. 16.   Contrary to Plaintiff's position, the ALJ properly considered the objective medical evidence and the factors set out in 20 C.F.R. § 404.1529(c) in arriving at his determination.  The ALJ considered Plaintiff's testimony that he did home repair work

like siding, painting, and plumbing, that he could sit for an hour before needing a break, and experienced shortness of breath due to obesity. Tr. 14-15, 32-34, 36-39. The ALJ also considered that Plaintiff's mental impairments did not prevent him from successfully going to school and obtaining an associate's degree, and noted that Plaintiff himself admitted numerous time he was doing well emotionally, mentally, and physically. Tr. 16-17. Furthermore, the ALJ specifically considered that Plaintiff reported numerous times doing well on medication, and was experiencing no side effects. Tr. 16. Thus, although Plaintiff had medically determinable impairments that reasonably could be expected to produce the symptoms he described, his testimony regarding his disabling limitations was not entirely credible in light of his other testimony concerning his activities.

In addition, Plaintiff claims that the ALJ erred by not explicitly applying the seven factors listed in 20 CFR § 404.1529(c)(3) and SSR 96-7p. SSR 96-7p explains that "the findings of credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 1996 SSR LEXIS 4 (1996). The Second Circuit has stated that "[w]hen, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that

he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Monguer v. Heckler, 722 F.2d at 1040 (citing Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)); see also Barringer v. Commissioner of Social Security, 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005) (stating that "an ALJ is not require to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered.") (quotation omitted). In this case, the ALJ's rationale for his credibility determination can be "gleaned from the record." As discussed above, in assessing Plaintiff's credibility, the ALJ specifically considered that Plaintiff did home repairs, could sit an hour before needing a break, obtained an associate's degree, and that he admitted he was doing well mentally, emotionally, and physically despite allegations of disabling limitations. Tr. 17. Additionally, the ALJ considered that Plaintiff reported doing well on medication, with no side effects. Tr. 16. The Court notes that the ALJ did not discount Plaintiff's complaints entirely. Rather, in assessing Plaintiff's RFC, the ALJ determined that was Plaintiff was unable to perform more than light work with certain limitations. Accordingly, Plaintiff's argument that the ALJ failed to properly assess his subjective complaints is rejected.

**D.  A Finding of Disability is Not Warranted Due to Plaintiff's Inability to Perform Sustained Work**

At point V of Plaintiff's Memorandum in support of his motion, he claims that "the uncontradicted evidence of record demonstrates that [he] has been unable to hold a job since 2003, and has such low motivation that he is unable to seek a job, much less sustain one." Pl's Mem., Point V. Consequently, he maintains that a finding of disability is warranted given his inability to perform sustained work activities.

In support of his position, Plaintiff cites to various decisions from outside this Circuit for the proposition that a claimant who demonstrates an inability to maintain a job for more than a short period of time is not capable of substantial gainful activity, and is disabled. See, e.g., Gatliff v. Commissioner of Soc. Sec. Admin., 172 F.3d 690, 694 (9th Cir. 1999); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994); Tennant v. Schweiker, 682 F.2d 707 (8th Cir. 1982); Parish v. Califano, 642 F.2d 188, 192 (6th Cir. 1981). Regardless of whether the cases Plaintiff cites accurately state the law in this Circuit, Plaintiff has not shown that he could not stay employed in a single position. As already discussed above, substantial evidence supports the ALJ's RFC determination and credibility determination.

**E.  The Commissioner did not Err in Evaluating the Severity of Plaintiff's Mental Impairment**

At point VI of Plaintiff's Memorandum, he argues that the Commissioner erred as a matter of law in evaluating the severity of

Plaintiff's mental impairment. Specifically, he claims that although the ALJ found that Plaintiff's anxiety and depression were severe impairments, he erroneously determined that "the sole limitation flowing from these impairments was a restriction to simple instructions and limited interaction with the public and coworkers." Pl's Mem. at 15. Again, as discussed above, there is substantial evidence in the record that the ALJ did not err in determining that Plaintiff's mental impairments were not so severe as to preclude any type of substantial gainful employment.

## CONCLUSION

After careful review of the entire record, and for the reasons stated, this Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the Commissioner's decision is affirmed. For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 5). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 8), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     April 24, 2013
           Rochester, New York